**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JANICE A. GROSS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 4:12CV1312NCC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.[1]** | ) | |

**MEMORANDUM AND ORDER**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Janice A. Gross (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Plaintiff has filed a brief in support of the Complaint. Doc. 18. Defendant has filed a brief in support of the Answer. Doc. 23. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). Doc. 25.

**I.**
**PROCEDURAL HISTORY**

Plaintiff filed her applications for DIB and SSI alleging a disability onset date of March 25, 2006. Tr. 9. Plaintiff's applications were denied and she requested a hearing before an Administrative Law Judge (ALJ). Tr. 64-69. After a hearing, in a decision dated September 16,

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she should be substituted for Michael J. Astrue as the defendant. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Act.

2010, the ALJ found Plaintiff not disabled.  Tr. 9-19.  Plaintiff filed a request for review with the Appeals Council, which denied Plaintiff's request.  Tr. 1-3.  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'"  Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities."  Id.  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work."  Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1.  If the claimant has one of, or the medical equivalent of, these

impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a

preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision

which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. See Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider the following factors. They are:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work

record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing.  See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints.  See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995).  It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988).  The ALJ, however, "need not explicitly discuss each Polaski factor."  Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004).  See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)).  The ALJ need only acknowledge and consider those factors.  See id.  Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence.  See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments.  20 C.F.R. § 404.1545(b)-(e).  The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy.  See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)).  The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work.  See Goff, 421 F.3d at

790; <u>Nevland</u>, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. <u>Warner v. Heckler</u>, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. <u>See</u> <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. <u>See</u> <u>Goff</u>, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); <u>Rautio</u>, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. <u>See</u> <u>Baker v. Barnhart</u>, 457 F.3d 882, 894-95 (8th Cir. 2006); <u>Carlock v. Sullivan</u>, 902 F.2d 1341, 1343 (8th Cir. 1990); <u>Hutsell v. Sullivan</u>, 892 F.2d 747, 750 (8th Cir. 1989).

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. <u>See</u> <u>Onstead</u>, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. <u>See</u> <u>Cox</u>, 495 F.3d at 617; <u>Krogmeier</u>, 294 F.3d at 1022.

Plaintiff testified at the hearing that she was 5'2" tall and weighed 190 pounds; she could not sit 6 hours in an 8-hour day; she spent most days laying down; on a good day, she would lie

down two to three times, fifteen to twenty minutes at a time; on other days she would lie down two to five hours; she had constant neck, back, hip, and knee pain; despite taking medication, she had pain; she had fatigue from fibromyalgia; three days a week she had so much pain she could not get out of bed; she had difficulty sitting in regular chairs; and she could stand about twenty minutes before needing to sit down. Tr. 32-47. Plaintiff claimed she was disabled due to disorders of the spine, joint disease, fibromyalgia, and an emotional/mental impairment.

The ALJ found Plaintiff met the insured status requirements through December 31, 2012; she had not engaged in substantial gainful activity since her alleged onset date, March 25, 2006; she had the severe impairments of disorders of the spine, degenerative joint disease, and fibromyalgia; she did not have a severe emotional/mental impairment; Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment; she had the RFC to perform the full range of sedentary work as defined in the Act[2]; Plaintiff could perform her past relevant work as a collector, which is ordinarily performed at the sedentary level in the national economy; and, therefore, Plaintiff was not disabled.

Plaintiff argues the ALJ erred in determining her RFC in that he failed to impose additional limitations arising out of her physical impairments and by conducting an improper analysis of the medical evidence, as the medical evidence supported her claims regarding the

_____

[2] 20 C.F.R. ' 404.1567(a) defines sedentary work as follows: ASedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.@ Indeed, SSR 85-15, 198520 C.F.R. ' 404.1567(a) defines sedentary work as follows: ASedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.@

severity of her physical limitations, including pain and fatigue. Plaintiff further claims the ALJ

erred in failing to make sufficiently specific findings regarding her credibility and by failing to

follow the applicable case law. For the following reasons, the court finds that Plaintiff's

allegations are without merit and that the ALJ's decision is supported by substantial evidence.

## A.    Plaintiff's Credibility:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation

of Plaintiff's credibility was essential to the ALJ's determination of other issues, including

Plaintiff's RFC.  See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails

to recognize that the ALJ's determination regarding her RFC was influenced by his determination

that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir.

2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010).   As set forth more fully above, the ALJ's

credibility findings should be affirmed if they are supported by substantial evidence on the

record as a whole; a court cannot substitute its judgment for that of the ALJ.  Guilliams v.

Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882.

To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations

relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an

ALJ's decision where the decision is supported by substantial evidence.  Randolph v. Barnhart,

386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000);

Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275

(8th Cir. 1995).

Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are

acknowledged and examined prior to making a credibility determination; where adequately

explained and supported, credibility findings are for the ALJ to make.  See Lowe v. Apfel, 226

F.3d 969, 972 (8th Cir. 2000).  See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004)

("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is

recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966

(8th Cir. 1996).  In any case, "[t]he credibility of a claimant=s subjective testimony is primarily

for the ALJ to decide, not the courts."  Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir.

2001).  "If an ALJ explicitly discredits the claimant=s testimony and gives good reason for doing

so, [a court] will normally defer to the ALJ=s credibility determination."  Gregg v. Barnhart, 354

F.3d 710, 714 (8th Cir. 2003).  See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010);

Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).  For the following reasons, the court finds

that the ALJ's  credibility determination is based on substantial evidence.

First, the ALJ considered that diagnostic testing failed to support Plaintiff's claims

regarding the severity of her impairments.  Imaging from August 2006, showed no active

pulmonary disease, old right-sided rib fracture deformities, and old lower thoracic vertebral body

fracture.  Tr. 365.  A November 2006 MRI showed multilevel spondylosis and chronic cord

compression in the cervical spine, without cord edema or syrinx.  Other testing showed a

compression deformity at T12, degenerative changes at T12-L1 and L1-L2, and scoliatic

curvature of the thoracic spine.  Tr. 364.  A February 2007 MRI of the hips showed minimal

increased signal in the areas of the greater trochanter, bilaterally, which was adjacent to tissue,

not in the bone, and "of questionable significance."  Tr. 455.  A May 2007 MRI of the lumbar

spine showed postoperative changes at L5 and S1; some prominent right disc protrusion seen on

a previous exam was not seen.  Tr.  466.  October 2007 imaging showed Plaintiff's fusion at L5-

S1 was unchanged and without evidence of acute complication; her chronic compression at T12

was unchanged; there was no new loss of vertebral body height; there was mild degenerative disc

space narrowing, and facet arthrosis at several levels was unchanged. Tr. 457. June 2008 EMG testing noted moderate left carpal tunnel syndrome, for which surgery was recommended. Tr. 347. A September 2008 MRI of the cervical spine showed prominent disc protrusions. Imaging of the lumbar spine showed no significant change since Plaintiff's previous MRI. Tr. 458-59. April 2009 imaging of Plaintiff's left knee showed mild extensor mechanism strain, trace marrow edema, severe patellofemoral chondropathy, joint effusion, and no meniscal or cruciate ligament tear. Tr. 539. Imaging of the right knee showed degenerative changes, with moderate to severe patellofemoral and medial compartmental chondropathy, no meniscal or cruciate ligament tear, mild extensor mechanism strain, and joint effusion. Tr. 541.

An April 2009 MRI of the right knee showed mild extensor mechanism strain, trace marrow edema, severe patellofemoral chondropathy, joint effusion, and no meniscal or cruciate ligament tear. Tr. 539. May 2010 MRIs showed, in regard to the cervical spine, mild generalized disc bulge at C3-C4-5, moderate impingement of the cervical cord, mild left foraminal narrowing at C6-C7, and minimal midline disc protrusions at C2-C3 and C7-T1, without impingement on the cord. Tr. 576. As for the lumbar spine, moderate generalized disc bulge and marked bilateral facet arthropathy were seen at L4-L5, and there was mild bilateral foraminal stenosis at L5-S1. Tr. 577. Despite Plaintiff's argument to the contrary, the Regulations explain that an ALJ should consider objective evidence when considering a claimant's credibility. See 20 C.F.R. §§ 404.1529(c)(1-(2), 416.929(c)(1)-(2); Gonzalez v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (ALJ is entitled to make factual determination that claimant's subjective complaints are not credible in light of objective medical evidence to contrary); Forte v. Barnhart, 377 F.3d 892, (8th Cir. 2004) (lack of objective medical evidence is factor to be considered by ALJ).

Second, the ALJ considered the medical findings of doctors who treated and examined Plaintiff. He considered, in particular, that there was a lack of significant findings on longitudinal examinations. Tr. 17-18. Indeed, on June 1, 2006, Terry Moore, M.D., reported that Plaintiff had tenderness in the back, right wrist, knee, and other areas, but Dr. Moore noted no evidence of swelling and reported that Plaintiff had full range of motion in her joints and both her upper and lower extremities, and that Plaintiff's sensation was intact. Tr. 256. Although Peter Lamble, M.D., reported, in October and November 2006, that Plaintiff had tenderness at fibromyalgia trigger points, Plaintiff had no obvious swelling, redness or warmth of the wrist joints, bilaterally, and she had intact sensation of the palms. Tr. 412-13. Although Plaintiff complained of neck, back, and joint pain when presenting to Peter Yoon, M.D., on December 7, 2006, Dr. Yoon reported that Plaintiff had 5/5 strength, intact sensation, and no lumbar spasms.[3] Tr. 431-34. In January 2007, Plaintiff told Dr. Yoon she was not in as much pain. Tr. 435. When Plaintiff presented in May 2008, complaining of numbness and tingling in her left arm and hand, examination showed no vertebral tenderness to palpation or with forward flexion/lateral rotation of the neck; that her extremities were without edema; and that her sensory exam was intact. Tr. 420.

When Plaintiff presented to Nabil Ahmad, M.D., in October 2008, for neck and low back pain, Dr. Ahmad reported examination was consistent with "mild" pain symptoms with both felexion and extension; there was no evidence of palpable tenderness; Plaintiff had decreased pinprick perception; and she had functional gate and full strength of the upper and lower extremities. Tr. 488-89. When Plaintiff presented in January 2009, complaining of increasingly

---

[3] The court notes that Dr. Yoon's records of this date are not totally legible, but Plaintiff does not take issue with the ALJ's characterization of them as stated above.

severe low back and neck pain, diffuse pain was noted; there were no gross abnormalities in Plaintiff's back on examination; she was without radicular pain, peripheral neuropathy or peripheral claudication; and records of this date do not reference a limitation in Plaintiff's range of motion. Tr. 521-22. In April 2009, when Plaintiff presented for bilateral knee pain, which she had for two years, Timothy Galbraith, M.D., reported that, on examination, Plaintiff's sensation was intact; she had no tenderness to palpation, no swelling, and full strength and range of motion in the hips, ankles, and feet; and her muscle tone was normal. Tr. 543. When Plaintiff presented to Matthew Tiefenbrunn, M.D., in December 2009, reporting pain so bad at times she wanted to commit suicide, Dr. Tiefenbrunn reported that, upon examination, Plaintiff had subjective diffuse stiffness and multiple trigger points in the trunk and upper back region. Dr. Tiefenbrunn, however, noted no obvious joint abnormalities or swelling, and reported that Plaintiff was negative for a gait disturbance, psychiatric symptoms, and "bond/joint symptoms and weakness." Tr. 557-59. Although an ALJ may not disregard a claimant=s subjective allegations because they are not fully supported by objective medical evidence, an ALJ may properly discount subjective complaints if inconsistencies exist in the record as a whole. Gonzalez v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (citing Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002)); 20 C.F.R. ' ' 404.1529(c), 416.929(c).

Third, the ALJ considered that Plaintiff had significant numerous breaks in her medical treatment. Tr. 17. As further considered by the ALJ, after Plaintiff's surgeries in late 2006 and early 2007 for spine problems, she did not follow up for further treatment until 2008. Tr. 13, 332, 342. After Plaintiff saw Dr. Yoon, on October 4, 2007, complaining of neck and back pain, she did not seek treatment again until January 2008, when she saw Dr. Tiefenbrunn. Tr. 423. After that, she did not present again until May 7, 2008. Tr. 420. A lack of regular treatment for

an alleged disabling condition detracts from a claimant=s credibility.  See Roberts v. Apfel, 222

F.3d 466, 469 (8th Cir. 2000) (citing Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990));

Comstock v. Chater, 91 F.3d 1143, 1146-46 (8th Cir. 1996) (citing Benskin, 830 F.2d at 884);

Polaski, 739 F.2d at 1322.  Additionally, a lack of objective medical evidence contradicts a

claimant's allegations of disabling pain.  Comstock, 91 F.3d at 1147 (citing Smith v. Shalala, 979

F.2d 1371, 1374 (8th Cir. 1993).

Fourth, the ALJ considered Plaintiff's daily activities, including that, at least on good

days, she could care for a pet, prepare meals and/or reheat leftovers, perform some household

chores, drive a vehicle, and shop in stores.  Tr. 18, 182-89.  Consistent with the case law, the

ALJ considered that, while Plaintiff's ability to engage in such activity was not entirely

dispositive, her ability to do so was at odds with her being found disabled.  While the

undersigned appreciates that a claimant need not be bedridden before he or she can be

determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with

her subjective complaints of a disabling impairment and may be considered in judging the

credibility of complaints.  Eichelberger, 390 F.3d at 590 (holding that the ALJ properly

considered that the plaintiff watched television, read, drove, and attended church upon

concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d

1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386

(8th Cir. 1992); Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987); Bolton v. Bowen, 814

F.2d 536, 538 (8th Cir. 1987).  Indeed, the Eighth Circuit holds that allegations of disabling Apain

may be discredited by evidence of daily activities inconsistent with such allegations.@  Davis v.

Apfel, 239 F.3d 962, 967 (8th Cir. 2001).  AInconsistencies between [a claimant=s] subjective

complaints and [his] activities diminish [his] credibility.@  Goff v. Barnhart, 421 F.3d 785, 792

(8th Cir. 2005) (citing <u>Riggins v. Apfel</u>, 177 F.3d 689, 692 (8th Cir. 1999)). <u>See also</u> <u>Haley v. Massanari</u>, 258 F.3d 742, 748 (8th Cir. 2001); <u>Nguyen v. Chater</u>, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant≤s daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis).

Fifth, the ALJ considered that, although Plaintiff had surgeries on her lumbar and cervical spine, records reflected that Plaintiff made good recoveries and achieved good pain relief within a relatively short time after each surgery. Tr. 18, 436, 440. Specifically, after December 2006 cervical discectomy and fusion surgery, Plaintiff reported, in February 2007, that she had good pain relief (Tr. 436), and, in June 2007, that she was not in as much pain (Tr. 435). Also, Dr. Yoon reported, in June 2007, that Plaintiff was "getting a lot better and had good pain relief. Tr. 440.

Sixth, the ALJ considered that Plaintiff's poor earning record did not suggest, but for her alleged impairments, she would be working, especially at a level constituting substantial gainful activity. Tr. 18. Indeed, Plaintiff's SSA earnings record showed that she had minimal or no earnings in many years. Tr. 143. An ALJ may discount a claimant≤s credibility based upon her poor work record. <u>See</u> <u>Ramirez</u>, 292 F.3d 576, 581 (8th Cir. 2002) (holding that in making a credibility determination, the ALJ properly weighed heavily claimant≤s poor work record and the fact that her prospective SSI benefits would exceed the amount she was able to earn while working; this evidence suggests that a claimant is not motivated to work); <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1218 (8th Cir. 2001); <u>Comstock v. Chater</u>, 91 F.3d 1143, 1147 (8th Cir. 1996) (holding that a claimant≤s prior work history characterized by fairly low earnings and significant breaks in employment casts doubt on his credibility); <u>Pena v. Chater</u>, 76 F.3d 906, 908 (8th Cir.

1996) (holding that a sporadic work record failed to support a claimant=s credibility).  A long and continuous past work record with no evidence of malingering is a factor supporting credibility of assertions of disabling impairments.  See Allen v. Califano, 613 F.2d 139, 147 (6th Cir. 1980).  For the same reason, an ALJ may discount a claimant=s credibility based upon her poor work record.[4]  See Ownbey v. Sullivan, 5 F.3d 342, 345 (8th Cir. 1993).

Seventh, the ALJ considered that Plaintiff's doctors reported that Plaintiff should exercise.  Tr. 12, 15.  In this regard, Plaintiff was encouraged to exercise regularly by Dr. Moore.  Tr. 257.  When he reviewed Plaintiff's knee MRIs, Dr. Galbraith noted, in June 2009, that Plaintiff "will join gym for exercise program."  Tr. 551.  See Hacker v. Barnhart, 459 F.3d 934, 938 (8th Cir. 2006) (affirming where ALJ considered treating doctor admonished claimant for failing to exercise).

Eighth, the court notes Plaintiff was not always compliant with doctors' recommendations.  Notably, Dr. Tiefenbrunn reported, in December 2009, that Plaintiff was not exercising regularly and not following the prescribed diet.  Tr. 557.

Ninth, while the ALJ found Plaintiff's allegations regarding the severity of her impairments not totally credible, he did limit her to sedentary work, thereby acknowledging she had limitations.  See Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) (ALJ's limiting

_____

[4] Although the court recognizes that the ALJ may consider a claimant=s financial motivation to qualify for benefits while assessing the credibility of a claimant=s subjective complaints, the court further recognizes that such motivation should not be dispositive, because all disability claimants are financially motivated to some extent.  See Ramirez v. Barnhart, 292 F.2d 576, 582 (8th Cir. 2002) (citing Dodd v. Sullivan, 963 F.2d 171, 172 (8th Cir. 1992); Fox v. Apfel, 980 F. Supp. 312, 317 (S.D. Iowa 1997)).

claimant to sedentary work was a significant limitation, which showed ALJ gave come credit to doctor's medical opinions).

In conclusion, the court finds that the ALJ's consideration of Plaintiff's credibility is based on substantial evidence and that it is consistent with the Regulations and case law.

**B.      Plaintiff's RFC:**

The Regulations define RFC as Awhat [the claimant] can do@ despite his or her Aphysical or mental limitations.@ 20 C.F.R. ' 404.1545(a).  AWhen determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant=s mental and physical impairments.@ Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001).  AThe ALJ must assess a claimant=s RFC based on all relevant, credible evidence in the record, ›including the medical records, observations of treating physicians and others, and an individual=s own description of his limitations.=@ Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).  See also Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995).  To determine a claimant=s RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant=s impairments to determining the kind of work the claimant can still do despite his or her impairments.  Although assessing a claimant=s RFC is primarily the responsibility of the ALJ, a Aclaimant's residual functional capacity is a medical question.=@ Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that A›[s]ome medical evidence,= Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant=s ›ability to function in the workplace,= Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000). @ Thus, an ALJ is Arequired to consider at least some supporting evidence from a professional.@ Id.

See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) (AThe ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC.@); Eichelberger, 390 F.3d at 591.

RFC is Aan administrative assessment of the extent to which an individual=s medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.@ Social Security Regulation (SSR) 96-8p, at *2 (July 2, 1996). Additionally, ARFC is the individual=s maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual=s abilities on that basis.@ Id. Moreover, A[i]t is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain.@ Id.

Although Plaintiff suggests the ALJ should have based his RFC determination only on medical evidence, consistent with the case law, the ALJ determined Plaintiff's RFC based on all relevant evidence, including the medical evidence, testimonial evidence, and factors relevant to Plaintiff's credibility. See Lauer, 245 F.3d at 704; McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (claimant's RFC should be based on all relevant evidence, including medical records, observations of doctors and others, and claimant's own description of her limitations); Singh, 222, F.3d at 451.

To the extent Plaintiff argues the ALJ should have included limitations beyond those imposed by virtue of her being limited to sedentary activity, the ALJ was required to include only limitations which he found credible in Plaintiff's RFC. See McKinney, 228 F.3d at 863.

Indeed, the ALJ made credibility determinations, as discussed above, and determined that Plaintiff's assertions regarding her limitations were not entirely credible; the court has found the ALJ's credibility determination is based on substantial evidence.

As for Plaintiff's argument that, when determining her RFC, the ALJ failed to consider that doctors prescribed her medications (Doc. 18 at 22), the ALJ did consider that Plaintiff had "pharmaceutical management." Tr. 14-15. In fact, conditions which can be controlled by treatment are not disabling. See Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010); Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989).

As for Plaintiff's argument that, when considering her failure to pursue treatment when determining her RFC, the ALJ should have considered whether treatment would have restored Plaintiff's ability to work, the Regulation which Plaintiff's cites, 20 C.F.R. § 404.1530, applies when an ALJ denied benefits solely on the basis that a claimant failed to follow prescribed treatment.

In conclusion, the court finds that the ALJ's determination that Plaintiff had the RFC for sedentary work is based on substantial evidence and that it is consistent with the Regulations and case law. After determining Plaintiff's RFC, as required by the Regulations, the ALJ determined, based on the Guidelines and the testimony of a VE, that her past relevant work as a

collector was typically performed as sedentary; and that, therefore, as further testified by the VE, Plaintiff could perform her past relevant work.[5]

---

[5] 20 C.F.R. ' 404.1560 states in relevant part in regard to a claimant≠s ability to perform past relevant work:

(b) Past relevant work ...

(2) Determining whether you can do your past relevant work. We will ask you for information about work you have done in the past. We may also ask other people who know about your work. (See ' 404.1565(b).) We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

(3) If you can do your past relevant work. If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy. ...

Upon posing a hypothetical to the VE, the ALJ in the matter under consideration was not required to include all of Plaintiff's alleged limitations, but only those which the ALJ found credible.  See Martise v. Astrue, 641 F.3d 909, 927(8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole."); Guilliams v. Barnhart, 393 F.3d 789, 804 (8th Cir. 2005) (holding that a proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by the ALJ); Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."); Sobania v. Sec=y of Health, Educ. & Human Servs., 879 F.2d 441, 445 (8th Cir. 1989); Rautio v. Bowen, 862 F.2d 176, 180 (8th Cir. 1988).  Where a hypothetical question precisely sets forth all of the claimant=s impairments, the VE's testimony constitutes substantial evidence supporting the ALJ=s decision. Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("Based on our previous conclusion ... that >the ALJ's findings of [the claimant=s] RFC are supported by substantial evidence,= we hold that >[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner=s denial of benefits.=") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)); Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE=s testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant=s limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990).  As such, the court finds that the ALJ's determinations that Plaintiff can perform her past relevant work and, ultimately, that she is not disabled are based on substantial evidence.  See 20 C.F.R. ' 404.1560(b); Bowen v. City of New York, 476 U.S. 467,

471 (1986) (if the claimant is found to be able to perform the duties of her past relevant work, then she is considered not disabled and therefore ineligible for benefits).

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint is **DENIED**; Docs. 1, 18.

**IT IS ORDERED** that a separate judgment be entered incorporating this Memorandum and Order.

Dated this 24th day of April 2014.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE